# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CIS COMMUNICATIONS, L.L.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> REPUBLIC SERVICES, INC. and ) <br> ALLIED SERVICES, LLC, ) <br> ) <br> Defendants. ) | Case No. 4:21-CV-00359-JAR |

## MEMORANDUM & ORDER

This matter is before the Court on Plaintiff CIS Communications, L.L.C.'s Motion for Leave to File First Amended Complaint. ECF No. 63. For the reasons stated below, the motion will be granted in part and denied in part.

## BACKGROUND

The relevant allegations in this case are detailed in the Court's October 8, 2021, Memorandum and Order denying Defendants' motion to dismiss. ECF No. 27. In short, CIS entered into a contract (the "Service Agreement") with Midwest Waste, Inc. ("Midwest Waste") for waste-removal services in May 2005. Midwest Waste merged into Allied Services, LLC, a subsidiary of Republic Services Inc., in March 1998. The Service Agreement sets a basic-service rate of $44 per month, but it allows Allied to unilaterally increase this rate for certain enumerated reasons. All other rate increases require CIS's consent. CIS's monthly Service Charge incrementally increased from $44 per month in June 2005 to $328.19 per month by 2018. In 2021, CIS filed a complaint alleging Breach of Contract (Count I), Breach of Covenant of Fair Dealing (Count II), and Fraud in the Inducement (Count III).

As the parties in this case are well aware, Defendants' billing practices have been the subject of another lawsuit before the Court, *Pietoso, Inc. v. Republic Servs., Inc.*, No. 4:19-cv-397-JAR.  In fact, the operative complaint in that case is highly similar to CIS's complaint here, and it alleges the same grounds for relief.  The plaintiffs in this case and in *Pietoso* have both moved to allege two additional causes of action: one claim for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and one claim of unjust enrichment under Missouri common law.  Again, both of the proposed amended complaints and accompanying memoranda are highly similar, if not identical, in several respects.[1]  They both argue that the respective plaintiff has good cause to amend because information produced by Defendants during discovery alerted them to these new alternative causes of action.  And Defendants respond in both cases that the addition of the proposed claims would be futile because they fail to state a claim.

**LEGAL STANDARD**

When a party seeks to amend a pleading after the deadline in the applicable case management order, Rule 16(b) requires "a showing of good cause." *Kmak v. American Century Cos.*, Inc., 873 F.3d 1030, 1034 (8th Cir. 2017) (quoting *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013)).  "Good cause requires a change in circumstances, law, or newly discovered facts." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).  "The primary measure of good cause is the movant's diligence." *Kmak*, 873 F.3d at 1034 (quoting *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014)).

---

[1] The Court will accordingly ask the parties to forgive it for repeating much of the analysis contained in its Memorandum and Order on Pietoso's motion.

If good cause is established, a court will then consider whether amendment is proper under Rule 15(a). *Nestle Purina Petcare Co. v. The Blue Buffalo Co., Ltd.*, No. 4:14–CV–859 RWS, 2016 WL 4272241, at *2 (E.D. Mo. Aug. 12, 2016) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). Under this liberal standard, a court may deny leave to amend "only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018); *see also Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001).

An amendment may be futile when it would not survive a motion to dismiss. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqubal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

## DISCUSSION

### A. Good Cause

CIS argues that it has good cause to amend its complaint because discovery produced in 2023 sheds new light on Defendants involvement in the price increases under the Service Agreement. Throughout this litigation, both Republic and Allied have denied involvement in the imposition of consumer price increases: Republic asserted that its subsidiaries determine the prices charged to customers, and Allied asserted that its local subdivisions determined the prices charged to customers. In February 2023, Defendants produced a document titled

3

"Administrative and Support Services and License Agreement," ("Support Services Agreement") which provides that Republic shall perform certain services for its subsidiaries in the capacity of an independent contractor, including calculating recommended customer price increases. Moreover, after the Court granted Pietoso's Second Motion to Compel on March 28, 2023, Republic produced a pricing algorithm it used to calculate the recommended price increases.[2]

CIS claims that the Administrative and Support Services and License Agreement and the pricing algorithm and support two causes of action that it was previously unaware of. First, it claims that the agreement indicates a relationship among the Defendants that can support a finding that they acted as "enterprise" under the Racketeer Influenced and Corrupt Organization Act. Second, it claims that the Republic's remuneration for its role in inflating consumer prices under the agreement can support a finding that Republic was unjustly enriched at CIS's expense. It insists that the addition of these claims will not prejudice Defendants because they arise out of the same operative facts as the previous iteration of its complaint, and Defendants have not engaged in any discovery which would need to be redone or supplemented.

The Court agrees that this constitutes good cause. The evidence cited by CIS to support its new claims was not produced until well after the Court's deadline to amend the pleadings and only after a lengthy discovery dispute in *Pietoso*. Though the Administrative and Support Services and License Agreement was produced in February 2023, the significance of that document and Republic's involvement in calculating and recommending the challenged price increases did not become apparent until several months later. In light of the efforts undertaken to elicit information from Defendants about Republic's role in the price increases, the Court does

---

[2] As CIS explains in its memorandum, the parties in this case and in *Pietoso* have entered into a discovery sharing agreement whereby Defendants' production is deemed to apply in all pending matters. ECF No. 63 at p. 6.

4

not find that the delay between Defendants' production of Administrative and Support Service and License Agreement and the current motion to amend evinces a lack of diligence.

### B. Futility of Amendment

Because CIS has demonstrated that it has good cause to amend the complaint, the Court must consider whether doing so would be futile. Defendants argue that amendment is futile because neither of CIS's claims would withstand a motion to dismiss under Rule 12(b)(6). As explained in further detail below, the Court agrees that CIS's RICO claim would not withstand a motion to dismiss, but it finds that CIS's unjust enrichment claim would withstand a motion to dismiss.

#### 1. Proposed Count IV: Violation of RICO, 18 U.S.C. § 1962(c)

Count IV of CIS's proposed First Amended Complaint alleges that Republic, Allied, and several other wholly owned subsidiaries of Republic violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). That provision makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state its § 1962(c) claim, CIS must therefore allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 990 (8th Cir. 1989). Defendants argue that CIS has failed to allege the second element—the existence of an enterprise—so amendment of the complaint to allege this count would be futile. While the Court disagrees with Defendants' precise legal theory, the Court agrees that amendment would be futile.

5

As a general rule, a corporation may serve as a person, and an association of business entities may qualify as an enterprise under § 1962(c).  *See* § 1961(3)-(4).  But in order for a person to be "employed by or associated with" an enterprise, the person must be distinct from the enterprise itself.  § 1962(c); *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("In ordinary English one speaks of employing, being employed by, or associating with others, not oneself.").  Thus, "[t]he person named as the defendant cannot also be the entity identified as the enterprise."  *Atlas Pile Driving Co.*, 886 F.2d at 995 (8th Cir. 1989).

In *Fogie v. THORN Americas, Inc.*, the Eighth Circuit considered whether this distinctiveness requirement "may be satisfied when wholly owned subsidiaries are the persons who conduct a RICO enterprise consisting only of the parent company and other related business entities that comprise the defendants' corporate family," and concluded, "it cannot."  190 F.3d 889, 897-98 (8th Cir. 1999).  The court explained,

> A parent company and a subsidiary are separate legal entities, but this is not enough. Nor is it enough that the parent and subsidiary corporations have different roles in the alleged enterprise, as would be typical of every parent-subsidiary relationship. Rather, there must be a greater showing that the parent and subsidiary are distinct than the mere fact that they are separate legal entities. To conclude otherwise would be to read the distinctiveness requirement out of RICO.

*Id.* at 898.

Here, CIS alleges an enterprise consisting of Republic; Allied; two wholly owned subsidiaries of Republic; and ten "currently-unknown entities which are subsidiaries or affiliates of Republic."  ECF No. 63-9 at 3, 38.  Under *Fogie*, the defendants in the Proposed First Amended Complaint—the same entities comprising the alleged enterprise—are insufficiently distinct from the alleged enterprise to be "employed by or associated with" the enterprise under § 1962(c).  Accordingly, CIS's claim would not survive a motion to dismiss.

CIS, like Defendants, erroneously argues that *Fogie* held that a parent and its subsidiaries cannot form an enterprise. But it attempts to distinguish *Fogie* by noting that *Fogie* was decided on an appeal from a district court's order granting summary judgment, not a motion to dismiss as in this case, and the Eighth Circuit relied on the fact that "[a]ll these entities [were] part of one corporate family operating under common control" as part of its decision. *Fogie*, 190 F.3d at 898. CIS claims that, here, the entities forming the alleged enterprise are not operating under common control because the Administrative and Support Services and License Agreement provides that Republic shall furnish certain services to its subsidiaries as an independent contractor. CIS reasons that this agreement creates "a distinct and separate relationship from the parent-subsidiary relationship of the parties, and therefore this relationship can also create a violation of RICO despite the holding in *Fogie*." ECF No. 63 at p. 11.

This argument turns on a few misinterpretations of *Fogie*. As an initial matter, the Eighth Circuit did not hold in *Fogie* that a parent company and its wholly owned subsidiary cannot form a RICO enterprise. It specifically recognized that "[a]n association of business entities . . . may serve as an 'enterprise.' " *Fogie*, 190 F.3d at 897. The parties' misunderstanding appears to stem from *Fogie*'s discussion of § 1962(d), the RICO provision which makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). In affirming summary judgment against plaintiffs on their subsection (d) claim, *Fogie* explained that, " as a matter of law[,] a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another." *Fogie*, 190 F.3d at 898. The parties appear to conflate this conspiracy element under subsection (d) with the enterprise element under subsection (c).

7

More importantly, CIS appears to misread *Fogie* as holding that a parent-subsidiary relationship is *alone* insufficient to satisfy the distinctiveness requirement, or that the entities at issue in that case were insufficiently distinct from each other as a factual matter. Instead, *Fogie* stated that a subsidiary *cannot* be sufficiently distinct from an enterprise consisting solely of its parent or other related subsidiaries so as to satisfy § 1962(c)'s distinctiveness requirement. *Id.* at 898 ("But we must consider whether a subsidiary may be sufficiently distinct from its parent or other related subsidiaries so as to satisfy § 1962(c)'s distinctiveness requirement. We believe it cannot."). Thus, even if there is also an "independent contractor" relationship among Republic and its subsidiaries, the alleged enterprise nonetheless consists solely of Republic and its subsidiaries. Therefore, the proposed defendants cannot be sufficiently distinct from the enterprise for CIS to state a claim.

Because Count IV fails to satisfy § 1962(c)'s distinctiveness requirement, CIS fails to state a claim under § 1962(c). Amending the complaint to include this cause of action would therefore be futile. The Court will accordingly deny CIS leave to amend to include this count.

2. Proposed Count V: Unjust Enrichment

Count V of CIS's proposed First Amended Complaint alleges that Republic was unjustly enriched. To state its claim, CIS must allege that (1) it conferred a benefit on Republic, (2) Republic appreciated the benefit, and (3) Republic accepted and retained the benefit under inequitable or unjust circumstances. *See Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. 2010). Republic argues that CIS's claim would fail because "a plaintiff cannot state an unjust enrichment claim against a parent or owner of a company who indirectly received a benefit from the plaintiff through a subsidiary," and here, CIS did not pay Republic directly. ECF No. 64 at p. 8. The Court disagrees.

8

Federal courts interpreting Missouri unjust enrichment law have consistently rejected the contention that the plaintiff must directly confer the benefit upon the defendant. *Moore v. GreenSky, LLC*, No. 4:20-CV-00002-FJG, 2020 WL 13580659, at *2 (W.D. Mo. Dec. 23, 2020) (collecting cases); *Cromeans v. Morgan Keegan & Co., Inc.*, No. 2:23-CV-04269-NKL, 2013 WL 12129609, at *7 (W.D.Mo. Nov. 5, 2013) ("[T]here does not appear to be any bright line rule regarding how directly the defendant must have received a benefit at the plaintiff's expense."); *Nice Glass, LLC v. Coll Fin. Holdings, LLC*, No. 4:18-CV-01835-NCC, 2019 WL 13119395, at *7 (E.D. Mo. July 30, 2019) (concluding the same). Defendants cite two cases to support their assertion that a benefit may not be conferred indirectly through a subsidiary, but both of those cases stand for more modest propositions. In the first case, *J.B. Contracting, Inc. v. Bierman*, the Missouri Court of Appeals merely held that the plaintiff failed to allege and produce facts showing that the plaintiff benefited the defendant in his personal capacity, rather than as a member of a limited liability company. 147 S.W.3d 814, 819 (Mo. Ct. App. 2004) (citing Mo. Rev. Stat. § 347.057, limiting liability for members of LLCs). In the second case, *Howard v. Turnbull*, the Missouri Court of Appeals held that "the owners of a limited liability company do not receive a benefit when a third party pledges collateral to secure a debt incurred by the company" because "the benefit flows to the limited liability company itself, not to the owners of the company." 316 S.W.3d at 437 (citing *J.B. Contracting, Inc.* 147 S.W.3d at 820).

Here, CIS does not allege that Republic benefited from service price increases merely as owners or members of Allied. Rather, it alleges that Republic was an active participant in determining the challenged consumer price increases under the Administrative and Support Services and License Agreement with Allied and the subsidiaries compensated Republic for these services. *See* ECF No. 63-9 at p. 37 ("Republic is paid a fee by the Subsidiaries for

9

providing its services related to the unauthorized price increases."). Moreover, its briefing on its motion to amend appears to show that Republic's compensation under this agreement had a direct relationship to consumer price increases. ECF No. 63 at p. 15. Whether CIS actually conferred a benefit to Republic, albeit indirectly, is a fact specific inquiry that must be considered in light of the totality of the circumstances.

In a single line in their opposition memorandum, Defendants appear to assert that CIS's unjust enrichment claim must fail because CIS's remedies are governed by a valid contract. *See* ECF No. 64 at p. 9. Missouri law does not permit a plaintiff to recover under both an express contract and for unjust enrichment. *See, e.g., Banner Iron Works, Inc. v. Amax Zinc Co.*, 621 F.2d 883, 889 (8th Cir. 1980). But "the fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint." *Owen v. General Motors Corp.*, No. 06–4067–CV–C–NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006). Even though CIS may not recover under both theories, it may assert unjust enrichment and breach of contract claims in the alternative. *See, e.g., Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Co-op. Ass'n*, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012). And here, CIS explicitly alleges its unjust enrichment claim in the alternative. ECF No. 63-9 at p. 42.

The Court will accordingly grant CIS leave to file an amended complaint to include this cause of action. Because it would be futile to amend the complaint to include CIS's proposed RICO claim, the Court will direct CIS to refile a proposed amended complaint only including its non-futile claims.

Accordingly,

**IT IS HEREBY ORDERED** that CIS's Motion for Leave to File First Amended Complaint is **GRANTED** in part and **DENIED** in part as described herein.  CIS shall file a proposed First Amended Complaint conforming to this Memorandum and Order no later than **January 18, 2024**.

Dated this 11th day of January, 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE